# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

TYESHA WILLIAMS
*o/b/o RMAC., a minor,*
and RMAC, *a minor,*

         CASE NO. 16-12176
   *Plaintiffs*,    DISTRICT JUDGE CARAM STEEH
*v.*         MAGISTRATE JUDGE PATRICIA T. MORRIS

COMMISSIONER OF SOCIAL SECURITY,

   *Defendant.*
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT (Docs. 11, 12)

## I.   RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment (Doc. 11) be **DENIED**, that the Commissioner's Motion for Summary Judgment (Doc. 12) be **GRANTED**, and that this case be **AFFIRMED**.

## II.   REPORT

### A.   Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned magistrate judge for the purpose of reviewing a final decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for childhood disability benefits ("CDB") under 42 U.S.C. §

1382c(a)(3)(C). (Doc. 3; Tr. 1-4). The matter is currently before the Court on cross-motions for summary judgment. (Docs. 11, 12).

Plaintiff Tyesha Williams brings this claim for Supplemental Security Income pursuant to the CDB program on behalf of her son, referred to by his initials "R.M.A.C." for the sake of privacy. (Doc. 12). To maintain clarity, the undersigned will simply refer to "Plaintiff" or "Plaintiff's mother" as necessary. Plaintiff was eleven years old as of January 29, 2015, the date of the ALJ's decision. (Tr. 32, 169). The Commissioner denied his claim. (Tr. 73). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which occurred on May 8, 2014, before ALJ Gerald Freeman. (Tr. 37-43). Plaintiff failed to appear at the hearing. (Tr. 43). A second hearing was held before ALJ Jerome Blum on November 21, 2014, wherein Plaintiff's mother testified with the aid of counsel. (Tr. 46-63). On January 29, 2015, the ALJ found Plaintiff not disabled. (Tr. 20-32). On May 3, 2016, the Appeals Council denied review. (Tr. 1-4). Plaintiff filed for judicial review of that final decision on June 14, 2016. (Doc. 1).

## B.     Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it

is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id*. at 286 (internal citations omitted).

### C.     Framework for Child Disability Determinations

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II, 42 U.S.C. § 401 *et seq.*, and the Supplemental Security Income Program ("SSI") of Title XVI, 42 U.S.C. § 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. *See* F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who have a

'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result in
> death or which has lasted or can be expected to last for a continuous period of not
> less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

CDB benefits are a type of SSI benefits. A child will be considered disabled if he or

she has a "medically determinable physical or mental impairment, which results in marked

and severe functional limitations." 42 U.S.C. § 1382c(a)(3)(C)(I). To determine whether a

child's impairment results in marked and severe limitations, Social Security

Administration ("SSA") regulations prescribe a three-step sequential evaluation process:

1. If a child is doing substantial gainful activity, the child is not disabled and the claim will not be reviewed further.

2. If a child is not doing substantial gainful activity, the child's physical or mental impairments will be considered to see if an impairment or combination of impairments is severe. If the child's impairments are not severe, the child is not disabled and the claim will not be reviewed further.

3. If the child's impairments are severe, the child's impairment(s) will be reviewed to determine if they meet, medically equal, or functionally equal the listings. If the child has such an impairment and it meets the duration requirement, the child will be considered disabled. If the child does not have such impairment(s), or if the duration requirement is not met, the child is not disabled.

20 C.F.R. § 416.924(a). The third step establishes a tripartite system for determining

whether the child is disabled, each of which is subject to its own criteria. *See  Shinn ex rel*

*Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1278 (11th Cir. 2004) (noting that

determining whether the child "meets," "medically equals," and "functionally equals" are three separate queries).

First, the ALJ must consider whether the child's ailments medically "meet" a listed impairment, *i.e.* those impairments set forth in the Listing of Impairments, 20 C.F.R. § Pt. 404, Subpt. P, App. 1, App. 2. To "meet" a listed impairment, a child must demonstrate both "A" and "B" criteria. *Id*. "A" criteria are medical findings and "B" criteria "describe impairment-related functional limitations." *Id*. An ALJ may determine whether impairments medically meet a listed impairment without aid of a physician advisor.

Second, the ALJ must determine whether the child's ailments medically "equal" a listed impairment. An ALJ is not empowered to determine whether impairments medically equal a listed impairment on their own, but must instead employ a physician to make this determination. *See Ostrander v. Comm'r of Soc. Sec.*, No. 14-13151, 2016 WL 2754906, at *3 (E.D. Mich. Apr. 5, 2016); *Brown v. Comm'r of Soc. Sec.*, No. 12-14057, 2014 WL 222760, at *13 (E.D. Mich. Jan. 21, 2014).

Third, the ALJ must determine whether the child's impairments "functionally equal" a listed impairment. This step is somewhat unusual in that it does not make reference to any particular listed impairment, but instead requires consideration of six major domains of functioning: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1). The child is deemed disabled if they have "marked" limitations, *i.e.* a limitation which

"interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities" 20 C.F.R. § 416.926a(e)(2)(I) in at least two of these areas. Likewise, the child is deemed disabled if they have an "extreme" limitation, *i.e.* a limitation which "very seriously" interferes with the claimant's "ability to independently initiate, sustain, or complete activities" 20 C.F.R. § 416.a(e)(3)(I) in at least one area. An ALJ need not employ a physician to determine whether the child's impairments functionally equal a listed impairment. *See* SSR 09-1p.

### D.     ALJ Findings

The ALJ applied the disability analysis described above and found at Step One that Plaintiff was a school-age child and had not engaged in substantial gainful activity since the alleged onset date. (Tr. 23). At Step Two, the ALJ found that Plaintiff had the following severe impairments: attention deficit hyperactivity disorder ("ADHD"), mood disorder, and oppositional defiant disorder ("ODD"). (*Id.*). At Step Three the ALJ found that Plaintiff's ailments did not meet or equal a listed impairment. (Tr. 24-32).

### E.     Administrative Record

#### 1.     Medical Evidence

The Court has thoroughly reviewed Plaintiff's medical record. In lieu of summarizing his medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

### 2. Application Reports and Administrative Hearing

#### a. Plaintiff's Mother's Testimony at the Administrative Hearing

At the November 21, 2014, hearing before the ALJ, Plaintiff's mother testified on behalf of her minor son. (Tr. 47). She noted that Plaintiff is in fifth grade, and was held back once, such that he should be in sixth grade. (*Id.*). Plaintiff's mother confirmed that Plaintiff's school teachers suggest he was functioning at a second grade level of scholastic achievement. (Tr. 48). Plaintiff had difficulty with being "disobedient," failing to listen to instructors, leaving the classroom, "fidgeting," and making noises. (*Id.*). Plaintiff took the medication Concerta for treatment of ADHD, but only partial relief. (Tr. 49). Plaintiff had difficulty taking criticism and following directions. (*Id.*). Plaintiff could not focus on homework because his mind wandered. (Tr. 50). Plaintiff was mostly capable of completing tasks as directed, but sometimes required reminders. (*Id.*). The ALJ asked whether Plaintiff could complete multi-step tasks, but Plaintiff's mother responded that the he was unable to multitask. (*Id.*). Plaintiff needed to be reminded of what task to complete "75 percent of the time." (Tr. 51). Plaintiff could complete homework problems by himself, but simply required reminders to "sit there and do" such work. (Tr. 51-52).

Use of the medication Concerta caused Plaintiff to vomit, sleep longer than usual, and delayed his reaction time. (Tr. 53). Despite use of that medication, Plaintiff experienced difficulty transitioning between tasks. (Tr. 54). Plaintiff did not have close friends, and sometimes physically abused classmates. (*Id.*). Plaintiff was considered for

placement in a special education program, but Plaintiff's mother was reluctant to place him in such a class for fear that Plaintiff would be upset and perhaps even suicidal at this perceived reduction in social stature. (Tr. 56-57).

Plaintiff's teachers and principal noted that he does not listen to instruction, runs in the hallways, is not in class at the prescribed time, "kicks and fumbles on the . . . tables," does not perform work when ordered to do so, and is generally uncooperative. (Tr. 60).

### b.      Teacher Questionnaires

On March 20, 2013, Plaintiff's teacher, Caitlin Simancek, completed a check-the-box style questionnaire regarding Plaintiff's overall functioning. (Tr. 187-94). Ms. Simancek noted that she had known Plaintiff for seven months, and that Plaintiff was a member of her classroom during normal schooling hours, five days per week, and for all teaching subjects. (Tr. 187). She wrote that Plaintiff had no problems acquiring and using information or attending and completing tasks. (Tr. 188-89). However, she wrote that Plaintiff had very serious problems respecting and obeying authority figures; serious problems expressing anger and asking permission; and an obvious problem seeking attention, following rules, using appropriate language, introducing and maintaining relevant and appropriate topics of conversation. (Tr. 190). She noted "an improvement in behavior as the year . . . progressed," despite "no extra help or support" being offered in reading. (*Id*.). Ms. Simancek had no difficulty understanding Plaintiff's speech, and she noted no issues moving around and manipulating objects. (Tr. 191). However, she noted serious problems handling frustration, using good judgment in dangerous circumstances,

and handling emotions and moods; she also noted an obvious problem with patience. (Tr. 192). She noted that Plaintiff had difficulty dealing with anger and mood, and had "come to school wearing ripped pants," an issue which she believed was beyond Plaintiff's control. (*Id*.). Overall, Ms. Simancek noted that Plaintiff's behavior had "improved significantly in the past few weeks," and was better able to manage his emotions. (Tr. 194). Finally, she noted that Plaintiff was regularly absent from school. (*Id*.).

On September 16, 2014, Plaintiff's math, science, and social studies teacher Mr. James Wiggins filled out a questionnaire regarding Plaintiff's condition. (Tr. 309-16). He knew Plaintiff for only twenty days, and taught him for three and one half hours daily. (Tr. 309). Mr. Wiggins found that Plaintiff's math and reading capacity were around the second grade level, despite being in fifth grade. (*Id*.). As to acquiring and using information, he checked boxes indicating that Plaintiff has a "very serious" problem with comprehending oral instructions, providing organized oral explanations and descriptions, expressing ideas in writing, learning, recalling learned material, and applying problem solving in class discussions. (Tr. 310). He also found that Plaintiff had a serious problem understanding and participating in classroom discussions, and an obvious problem comprehending oral instructions and math problems. (*Id*.). He wrote that Plaintiff did not follow oral instructions, was inattentive, fails to participate in classroom discussions, and that Plaintiff's problems were not corrected by reminders, proximity, or student role models. (*Id*.).

Mr. Wiggins also checked boxes indicating that Plaintiff had very serious or serious problems in all areas relating to attending and completing tasks. (Tr. 311). He wrote that Plaintiff was causing other students to become frustrated at his behaviors, that Plaintiff became yet more uncooperative when moved, could not focus on writing down answers, did not finish assignments, and would not complete a scantron examination. (*Id.*).

Mr. Wiggins also ticked boxes suggesting that Plaintiff had very serious problems expressing anger appropriately, following rules, and respecting authority figures; Plaintiff also had serious problems playing cooperatively with others, and seeking attention appropriately. (Tr. 312). He wrote that Plaintiff would not "respond to anything in the classroom," including repeated attempts at disciplinary measures, and that Plaintiff remained loud and disruptive. (*Id.*). He wrote that Plaintiff used other students "as an audience and tries to increase his negative behaviors in order to get attention from [teachers] or other students," and that students consequently did not wish to sit near Plaintiff. (*Id.*).

Mr. Wiggins also checked boxes suggesting that Plaintiff has very serious problems moving from one place to another and moving objects, though he did not write any commentary explaining these choices. (Tr. 313). Finally, he wrote that Plaintiff had very serious problems handling frustration appropriately, identifying and asserting emotional needs, and using coping skills; Plaintiff also had serious problems being patient. (Tr. 314). He wrote that Plaintiff had a "very low frustration level," was insubordinate, and had "no respect or acknowledgement of an authority figure in the room." (*Id.*).

### c.     Parental Questionnaires

On March 21, 2013, Plaintiff's mother completed a questionnaire regarding Plaintiff's activities of daily living. (Tr. 195-98). She wrote that Plaintiff spent his free time "play[ing] all day," and was unable to "sit still ever." (Tr. 195). Plaintiff was "disrespectful to adults and peers," and sometimes fought physically or verbally with classmates. (*Id.*). Due to transportation issues and doctor appointments, Plaintiff incurred "18 excused [and] 15 unexcused" absences from school. (Tr. 196). Plaintiff washed dishes, took out the trash, prepared food, and put things away daily. (Tr. 196-97). Plaintiff performed these tasks well. (Tr. 196). Plaintiff required "a lot" of supervision when spending time with his younger brother because "[Plaintiff] try [sic] to hurt [the younger brother] sometimes." (*Id.*). Plaintiff could perform personal care activities without difficulty. (*Id.*). He could use a phone without difficulty. (*Id.*).

On January 29, 2013, Plaintiff's mother completed a Vanderbilt Assessment Scale form, wherein she indicated that Plaintiff "often" loses his temper, has difficulty paying attention, talks too much, and lies to get out of trouble, amongst other symptoms. (Tr. 296). She also noted that he occasionally had trouble waiting his turn, started physical fights, and is physically cruel, among other symptoms. (*Id.*).

### F.     Analysis

Plaintiff asserts that remand is necessary because: i) The ALJ erroneously concluded that Plaintiff's condition does not functionally equal a listed impairment; ii) The ALJ

erroneously failed to obtain a consultative medical examination. I address these arguments in turn.

### 1. The Medical Evidence Does Not Support a Finding of Functional Equivalence

Plaintiff first argues that the ALJ erred by concluding that his condition is not functionally equivalent to a listed impairment under 20 C.F.R. § 416.926a(b). (Doc. 11 at 7-14). Plaintiff notes the reports and questionnaires produced by teachers Mr. Wiggins and Ms. Simancek, and his mother. He suggests that these documents demonstrate that he has severe problems in several areas of functioning. (*Id.*). Plaintiff argues that "20 C.F.R. § 416.924a(b) only requires marked limitations in two domains for an impairment to functionally equal a listed impairment." (*Id.* at 14). Because the reports and questionnaires produced by Plaintiff's teachers and mother indicate that he has significant impairments in several areas of functioning, Plaintiff suggests that he has demonstrated functional equivalency.[1] (*Id.* at 14-15).

### a. Acquiring and Using Information

Plaintiff is correct that, taken as true, the questionnaires filled out by his teachers and mother establish that he suffers from significant limitations in the areas of acquiring and using information; attending and completing tasks; interacting and relating with others;

---

[1] Plaintiff actually asserts that his marked limitations demonstrate that he has achieved "medical equivalency." (Doc. 11 at 15). However, given that Plaintiff makes no reference to any particular listing in this section, and instead references the six domains of functioning, it is clear that he intended to argue that he has achieved functional, rather than medical, equivalency. The undersigned will thus regard Plaintiff's statement as a mere scrivener's error, and will charitably evaluate whether Plaintiff has established functional equivalency.

and caring for himself. (Doc. 11 at 9-14). Yet the ALJ was not required to uncritically adopt this evidence, but rather was obligated to consider the supportability of these reports in light of the other available evidence. *See* 20 C.F.R. § 404.1527(a)(3). In this case, the ALJ found that Mr. Wiggins' questionnaire should be accorded little weight, because that teacher had only known Plaintiff for twenty days, which was "not enough time to assess the claimant's functioning." (Tr. 25). As to Ms. Simancek's questionnaire, the ALJ noted serious problems in terms of interacting and relating to others and taking care of himself, but the ALJ also noted that "the claimant's behavior improved significantly as the year progressed. He was noted to have only occasional behavior issues." (Tr. 25).

The ALJ compared this evidence to the findings of psychologists Dr. Czarnecki and Dr. Hugh Bray. Dr. Czarnecki, a non-examining agency psychologist, found that Plaintiff had no limitation in the areas of acquiring and using information, and moving about and manipulating objects. (Tr. 68-69). He found less than marked limitations in the areas of attending and completing tasks, interacting and relating with others, and caring for oneself. (*Id*.). Dr. Czarnecki diagnosed conduct disorder and ADHD. (Tr. 67).

Dr. Bray, a consultative physician, concluded in his April 20, 2012, report that Plaintiff's attention, focus, and persistence were "excellent for this assessment," without any "signs of ADD or ADHD." (Tr. 284). Dr. Bray found that Plaintiff was "likely to be less competent in areas than others due to disruptive behavior." (*Id*.).

The ALJ concluded, in light of the totality of the medical evidence, that Plaintiff did not suffer from marked limitations in any domain, and instead had less than marked

limitation in attending and completing tasks, interacting and relating with others, and caring for himself. (Tr. 28-31). As to acquiring and using information, the ALJ aptly notes that both Dr. Czarnecki and Ms. Simancek found that Plaintiff was not limited in this area. (Tr. 27). Plaintiff relies upon Mr. Wiggins report, yet the ALJ reasonably discounted Mr. Wiggins' report because he had very limited personal knowledge of Plaintiff's condition. (Tr. 25).

Plaintiff also suggests that his mother's Vanderbilt Assessment report shows that Plaintiff has difficult following directions and completing activities. (Doc. 11 at 10). The ALJ does not specifically reference this parental report, but he was not required to do so. "'[A]n ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered.'" *Dykes ex rel. Brymer v. Barnhart*, 112 F. App'x, 463, 467 (6th Cir. 2004) (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). Moreover, that report does not directly support a finding of marked or severe difficulties in any domain, but rather represents the sort of raw medical data which might assist a physician in diagnosing ADHD. *See C.L.G. v. Comm'r of Soc. Sec.*, No. 514CV1308GTSWBC, 2016 WL 836236, at *4 n. 2 (N.D.N.Y. Feb. 10, 2016) ("The Vanderbilt Assessment Scale is a questionnaire, often completed by parents and/or teachers, and is used to help healthcare professionals diagnose ADHD."), report and recommendation adopted sub nom. *Gamble v. Colvin*, No. 514CV1308GTSWBC, 2016 WL 830738 (N.D.N.Y. Mar. 3, 2016). ALJs are not qualified to interpret raw medical data, *see Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 726 (6th Cir. 2013), therefore the ALJ

14

was wise to rely upon the findings of physicians in the record rather than attempting to interpret this sort of raw medical data. Therefore, the ALJ did not err in concluding that Plaintiff suffers from no limitations in terms of his ability to acquiring and using information.

### b.    Attending and Completing Tasks

Plaintiff next argues that the evidence supports a finding that he suffers from marked limitations in the area of attending and completing tasks. (Doc. 11 at 10-11). Plaintiff again seeks to rely upon the dire findings of Mr. Wiggins, yet as discussed, the ALJ properly gave little weight to those findings. (*Id.*). Plaintiff also points to his mother's report that he fails to complete tasks, squirms, and leaves his seat at inappropriate times. (*Id.* at 11). The ALJ quite reasonably favored the findings of Ms. Simancek, Dr. Bray, and Dr. Czarnecki, who all found that Plaintiff did not suffer from marked limitations in this area. (Tr. 68, 189, 284). No error can be found here.

### c.    Interacting and Relating With Others

Plaintiff asserts that the evidence supports a finding of marked limitation in terms of his ability to interact and relate with others. (Doc. 11 at 11-13). He again turns to Mr. Wiggins' report, yet that report was rightly discounted. (*Id.* at 11). He also points to Ms. Simancek's report, which indicates that Plaintiff exhibits interrupting, disrespectful, angry behavior. (*Id.* at 12-13). The ALJ favored the findings of Drs. Bray and Czarnecki here, noting that even in Ms. Simancek's report, Plaintiff recently exhibited "significant improvement with only occasional problems." (Tr. 29). Plaintiff has failed to demonstrate

how or why the reports produced by Ms. Simancek and a social worker should be favored over those produced by a licensed physician and psychiatrist. At best, Plaintiff has identified evidence which could support a contrary result; she has not demonstrated that the ALJ's conclusion was erroneous or unsupported. Remand is not appropriate on this ground. *See Cutlip*, 25 F.3d at 286.

### d. Caring for Oneself

Finally, Plaintiff argues that the evidence supports a finding that he suffers from a marked limitation in terms of his ability to care for himself. (Doc. 11 at 13-15). Per SSR 09-7p, this domain incorporates consideration of the child's ability to "maintain a healthy emotional and physical state." Plaintiff once again cites to Mr. Wiggins' report, which again offers only weak support. Plaintiff notes that his mother reported he "has difficulty in listening when spoken directly to, loses his temper, and does not want to start tasks which require ongoing mental effort." (*Id*. at 13). Ms. Simancek noted "that [Plaintiff] has a serious problem in handling frustration appropriately, using good judgment regarding personal safety and dangerous circumstances, identifying and appropriately asserting emotional needs, and responding appropriately to changes in a mood," along with "problems responding appropriately to changes in mood, gets very angry and is unable to calm himself." (*Id*. at 14).

The ALJ's findings on this matter are terse, noting only that Plaintiff was able to perform personal grooming sufficiently, and that Dr. Czarnecki concluded that Plaintiff was less-than-markedly limited in this category. (Tr. 31). Given that the ALJ elsewhere

found Ms. Simancek's report persuasive, and given that she found several serious limitations in this area, the ALJ should have, at minimum, resolved conflicts between her findings and those of Dr. Czarnecki. It may be that the ALJ found good reasons for favoring Dr. Czarnecki's findings over Ms. Simancek's in this domain. Unfortunately, the ALJ's silence on the issue leaves the reader to guess and provides no insight into his thought process. This is not a robust foundation for judicial review, and the ALJ's silence amounts to error.

Nevertheless, I find that the ALJ's error is ultimately harmless and does not require remand. Plaintiff would functionally equal a listed impairment only if he was found to be markedly limited in at least two domains. *See* 20 C.F.R. § 416.926a(d). Thus even if the ALJ concluded that Ms. Simancek's report supported a finding that Plaintiff was markedly limited in the area of caring for himself, this single area of marked limitation would not support a finding of disability pursuant to functional equivalence. *See W. ex rel. A.R.M. v. Comm'r of Soc. Sec.*, No. 2:13-CV-277, 2014 WL 4272725, at *8 (S.D. Ohio Aug. 28, 2014) ("Thus, even if the Court sustained Plaintiff's remaining challenge that relates to one domain, it would not provide a basis for reversal. Any error would be harmless to the ALJ's ultimate determination that Plaintiff failed to establish a functional impairment equal to the listings."); *Smith ex rel. T.S. v. Astrue*, No. SAG-11-CV-165, 2012 WL 1067880, at *3 (D. Md. Mar. 28, 2012) ("Because a determination of functional equivalence requires two domains of marked limitation, even if the ALJ erred in the second domain, no reversible

error exists. Instead, any such error would be harmless because, absent any other marked limitation in another domain, the ALJ's finding of 'no disability' would stand.").

## 2. The ALJ Was Not Obliged to Acquire an Additional Consultative Examination

Plaintiff also argues that the ALJ was obligated to obtain an updated consultative examination following the submission of "multiple teacher questionnaires and medical evidence added to the record since a consultative examiner reviewed the mental aspects of the case on March 12, 2013." (Doc. 11 at 16). Plaintiff argues that the ALJ's failure to order a second consultative examination violated SSR 96-6p, which provides that "[a]n updated medical expert opinion must be obtained by the administrative law judge or the Appeals Council before a decision of disability based on medical equivalence can be made."

There are several problems with Plaintiff's argument. First, SSR 96-6p was rescinded on March 27, 2014, and thus did not apply to the ALJ's decision in this case. However, it was replaced by SSR 17-2p which establishes substantially identical requirements for the purpose of this case.

More significantly (and as aptly pointed out by the Commissioner), Plaintiff has conflated medical equivalency with functional equivalency. ALJs are indeed obliged to obtain the opinion of a physician when determining whether a claimant's ailments medically equal a listed impairment. *See Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir. Nov. 22, 1995) ("Generally, the opinion of a medical expert is required

before a determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b)). Failure to obtain a physician's opinion on the issue of medical equivalence is so plainly erroneous that courts sometimes deem it an "obvious error." *See Fason v. Comm'r of Soc. Sec.*, No. 16-11070, 2017 WL 1316945, at *10 (E.D. Mich. Mar. 17, 2017), report and recommendation adopted, No. 16-11070, 2017 WL 1279334 (E.D. Mich. Apr. 6, 2017); *McLaurin v. Comm'r of Soc. Sec.*, No. 15-13912, 2016 WL 7664222, at *12 (E.D. Mich. Dec. 1, 2016), report and recommendation adopted, No. 15-13912, 2017 WL 67453 (E.D. Mich. Jan. 6, 2017).

Yet there is no requirement that an ALJ obtain a medical opinion before determining functional equivalence. The policy interpretation of SSR 09-1p specifically notes that "[w]hile SSR 96-6p requires that an ALJ or the AC must obtain an updated medical expert opinion before making a decision of disability based on medical equivalence, there is no such requirement for decisions of disability based on functional equivalence." Courts in this circuit have repeatedly rejected arguments that SSR 96-6p imposes a requirement on ALJs to obtain a physician's opinion on the question of functional equivalence. *See Finney v. Comm'r of Soc. Sec.*, No. 1:15-CV-460, 2016 WL 2996623, at *3 (W.D. Mich. May 25, 2016); *Johnson v. Comm'r of Soc. Sec.*, No. 13-11658, 2014 WL 4798963, at *9 n.7 (E.D. Mich. Sept. 26, 2014). Because Plaintiff in this case argues that he is disabled pursuant to functional equivalence rather than medical equivalence, the ALJ's refusal to obtain an updated physician's opinion on functional equivalence was not error.

In sum, the ALJ's justification for finding that Plaintiff was not markedly limited in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others was sufficiently well supported. The ALJ insufficiently justified his finding that Plaintiff was not markedly limited in the area of caring for himself, but this error is harmless. The ALJ was not obliged to call upon a physician in determining whether Plaintiff's ailments were functionally equivalent to a listed impairment. The ALJ's decision is supported by substantial evidence, and the Commissioner's decision should be upheld.

### G. Conclusion

For the reasons stated above, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Doc. 11) be **DENIED**, the Commissioner's Motion (Doc. 12) be **GRANTED**, and that this case be **AFFIRMED**.

## III. <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are

advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Caldwell v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  April 21, 2017          S/ PATRICIA T. MORRIS
                               Patricia T. Morris
                               United States Magistrate Judge


**CERTIFICATION**

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: April 21, 2017          By s/Kristen Castaneda
                              Case Manager